In re CASH MEDIA SYSTEMS, INC., Debtor.

No. 02–33174–7.

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 27, 2005.

---

Arnold G. Polanco, Ross, Banks, May, Cron & Cavin, Houston, TX, for debtor.

MEMORANDUM OPINION ON ORDER TO SHOW CAUSE WHY FRANK W. McINTYRE SHOULD NOT BE SANCTIONED FOR: (1) FILING PLEADINGS IN THIS CHAPTER 7 BANKRUPTCY CASE IN VIOLATION OF "JUDGMENT OF PARTIALLY PROBATED SUSPENSION" SIGNED ON MAY 5, 2004 BY THE HONORABLE BRADY ELLIOTT IN CAUSE NUMBER 03–07352 STYLED *COMMISSION FOR LAWYER DISCIPLINE VS. FRANK McINTYRE, IN THE DISTRICT COURT OF DALLAS COUNTY, TEXAS, 192nd JUDICIAL DISTRICT;* (2) HAVING PRACTICED BANKRUPTCY LAW WITHOUT ASSOCIATING WITH A BANKRUPTCY LAW SPECIALIST AND HAVING ATTENDED A BANKRUPTCY HEARING NOT ACCOMPANIED BY A BANKRUPTCY LAW SPECIALIST IN VIOLATION OF SUCH "JUDGMENT OF PARTIALLY PROBATED SUSPENSION"; (3) FAILING TO COMPLY WITH BANKRUPTCY LOCAL RULE 1001(E) AND DISTRICT COURT RULE 83.1(K); (4) USURPING THE TRUSTEE'S DUTIES; AND (5) SUBORNING MISCONDUCT

JEFF BOHM, Bankruptcy Judge.

Beginning on May 11, 2005, and continuing on May 20, 2005, a hearing was held in the above styled case for Frank W. McIntyre (McIntyre) to show cause why he should not be sanctioned for: (1) Signing and filing both Terry Franklin's Notice of 2004 Examination (Notice of 2004 Examination) and Terry Franklin's Response to Tom McLaurin's Motion for Protective Order (Response to Motion for Protective Order) on March 11, 2005 during the 18–month period described in the above referenced "Judgment of Partially Probated Suspension"; (2) Appearing and arguing in this Court on February 15, 2005 without disclosing to this Court Lana Dieringer's background so that this Court could assess whether she is a "Bankruptcy Law specialist" with whom McIntyre must associate pursuant to the "Judgment of Partially Probated Suspension"; (3) Signing and filing such Notice of 2004 Exam and such Response to Motion for Protective Order on March 11, 2005 without being a member of the bar of this Court nor having obtained an order from this Court allowing him to appear as attorney-in-charge for Terry Franklin (Franklin); (4) Filing suit in a state court in the name of the Debtor without approval of the Trustee and without permission of this Court; and (5) Drafting and transmitting to the president of a foreign corporation a pleading to be filed in this Court on a *pro se* basis in direct contravention of Texas law. This Court finds that McIntyre has not shown cause and is therefore sanctioned for the above actions as delineated herein.

## I. FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The hearing on the Order to Show Cause was held on May 11, 2005 and continued on May 20, 2005. The relevant facts were established by (a) reference to the record in this case; (b) assertions made by counsel of record in pleadings and

at the hearings, which constitute judicial admissions; and (c) testimony adduced at the May 11 and May 20 hearings. Additional facts are also established through this Court's taking judicial notice of certain documents described herein.

The relevant facts, in chronological order, are as follows:

(1) On March 22, 2002, Cash Media Systems, Inc. (the Debtor) filed a Chapter 7 petition in this Court, which created the Debtor's Chapter 7 bankruptcy estate (the Estate) and gave rise to this bankruptcy case (the Bankruptcy Case.)

(2) Ben Floyd was initially appointed as trustee of the Estate. On March 10, 2004, Pamela Gale Johnson replaced Mr. Floyd as the Chapter 7 trustee (hereinafter either Mr. Floyd or Ms. Johnson, as the circumstances warrant, is referred to as the Trustee.)

(3) On March 19, 2004, the Trustee instituted an adversary proceeding (the Adversary Proceeding) in this Court against, among others, Thomas A. McLaurin (McLaurin) by filing a "Complaint to Avoid Fraudulent Conveyance, Preferential Transfer, Setoff, Turnover of Property of the Estate, Breach of Fiduciary Duty and Post–Petition Transfers" (the Complaint.)

(4) On May 4, 2004, the Honorable Brady Elliott (sometimes hereinafter referred to as Judge Elliott) signed a "Judgment of Partially Probated Suspension" in Cause Number 03–07352 styled *Commission for Lawyer Discipline v. Frank McIntyre, in the District Court of Dallas County, Texas, 192nd Judicial District* (the Judgment.) Among other items, Judge Elliott ordered that McIntyre:

"[Be suspended] from the practice of law for 1½ years (18 months), with the first three (3) months being active suspension from the practice of law and the remaining 15 months being probated"; . . . .

". . . refrain from the practice of Bankruptcy Law during the entire 1½ years (18 months) of this Judgment of Partially Probated Suspensions, UNLESS Respondent is associated with a Bankruptcy Law specialist. Even then, Respondent shall not sign any pleadings in Bankruptcy court and shall not attend Bankruptcy hearings unless accompanied by a Bankruptcy Law specialist."

(5) On February 2, 2005, Franklin, as a *pro se* petitioner, filed the following documents in the Adversary Proceeding: (a) Terry Franklin's Motion For Leave to Intervene (Docket No. 17); and (b) Terry Franklin's Original Petition in Intervention (Docket No. 18.)

(6) On February 15, 2005, this Court held a hearing as part of the Adversary Proceeding on Franklin's Motion for Leave to Intervene (the February 15th Hearing.) During the hearing, Franklin did not appear *pro se;* rather McIntyre appeared and represented to this Court that "I'm . . . present on behalf of Terry Franklin. And I'm accompanied by my local counsel Lana Dieringer on behalf of Terry Franklin." Hearing transcript, p. 1 lines 13–15 (Docket No. 39.) McIntyre continued to speak on behalf of Franklin and did not address whether he was or was not admitted to practice in the Southern District of Texas. McIntyre did not move under U.S. District Court Local Rule 83.1K for leave to appear as attorney-in-charge for Franklin. Other than to say "good afternoon, your Honor," Lana Dieringer ("Dieringer") did not speak at this hearing and McIntyre did not mention her again.

(7) During the February 15th Hearing, McIntyre read into the record the portion of the Judgment quoted in (4), above. McIntyre immediately thereafter discussed associating with bankruptcy counsel and described his and Franklin's former affiliation with Calvin Braun whom he (McIntyre) described as a "bankruptcy lawyer." Hearing transcript, p. 9 lines 7 and 8. McIntyre made no mention of Dieringer in this context.

(8) At the end of the February 15th Hearing, this Court denied the Motion (hearing transcript, p. 37, lines 24 and 25) and signed an Order Denying Motion for [Franklin's] Leave to Intervene (Docket No. 25.) Therefore, Franklin did not become a party to the Adversary Proceeding.

(9) Despite this Court's ruling on February 15th that Franklin could not intervene in the Adversary Proceeding, on February 23, 2005, McIntyre filed Terry Franklin's Motion to Dismiss the Bankruptcy Proceeding (Motion to Dismiss Bankruptcy) *in the Adversary Proceeding* (Docket No. 29.) McIntyre alone signed this Motion. McIntyre's name, address and telephone number appear on this Motion, and beneath his signature line is his State Bar number and the phrase "Attorney for Plaintiff Terry Franklin." Neither Dieringer's name nor any other attorney's name appears on this Motion as co-counsel for Franklin. In this Motion to Dismiss, Franklin "requests that the Court dismiss this bankruptcy [sic] and the adversary proceeding:...."

(10) On March 11, 2005, McIntyre filed Terry Franklin's Notice of 2004 Examination [of McLaurin] (Notice of 2004 Examination) in the Bankruptcy Case (Docket No. 50.) McIntyre alone signed this Notice. McIntyre's name, address and telephone number appear on this Notice, and beneath his signature line is his State Bar number and the phrase "Attorney for Plaintiff Terry Franklin." Neither Dieringer's name nor any other attorney's name appears on this Notice as co-counsel for Franklin. McIntyre certified that the parties in interest were served by fax on February 28, 2005.

(11) On March 4, 2005, McLaurin's counsel filed Tom McLaurin's Motion for Protective Order in the Bankruptcy Case (Docket No. 43) requesting an order precluding Terry Franklin from examining him (McLaurin) under Bankruptcy Rule 2004.

(12) On March 11, 2005, McIntyre filed Terry Franklin's Response to Tom McLaurin's Motion for Protective Order (Response to Motion for Protective Order) in the Bankruptcy Case (Docket No. 49.) McIntyre alone signed this Response. McIntyre's name, address and telephone number appear on this Motion, and beneath his signature line is his State Bar number and the phrase "Attorney for Plaintiff Terry Franklin." Neither Dieringer's name nor any other attorney's name appears on this Motion as co-counsel for Franklin.

(13) On March 11, 2005, this Court held a hearing in the Bankruptcy Case to consider McLaurin's Motion for Protective Order, which it granted. McIntyre was not present at this hearing; Dieringer was present.

(14) At the March 11, 2005 hearing, Dieringer stated that she had been "a Federal Deposit Insurance Corporation [FDIC] liquidation officer. And so I was involved in writing creditor plans for workouts.... So I was involved in a number of trials under

that.... After I got my license, I have been involved in bankruptcy cases, although I do not practice bankruptcy as an area of my practice." Further, "I do have experience in Bankruptcy Court.... But I would not say to the Court I am a specialist. And to the extent that the order that Mr. McIntyre is working with, means what it says, when i[t] says specialist ... then I could not say to the Court that I am." Hearing transcript, p. 3, lines 15–24 and p. 19, line 22 et seq. (Docket No. 57.)

(15) Pursuant to Federal Rule of Evidence 201(b), (c) and (f), the Court takes judicial notice of the fact that in her State Bar of Texas profile, Dieringer has listed her primary practice areas as "Real Estate" and that no data is on file for the Texas Board of Legal Specialization.

(16) On April 12, 2005, Dieringer filed a Motion of Substitution of Counsel in the Bankruptcy Case (Docket No. 62.) This Court has not granted this Motion as of this date.

(17) On April 25, 2005, this Court issued a Notice of Hearing on the Motion for Substitution of Counsel scheduled for May 11, 2005 (Docket No. 69.)

(18) On April 22, 2005, The Trustee filed in the Bankruptcy Case a "Trustee's Application For Approval of Compromise and Settlement Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019(a)." All remaining defendants in the Adversary Proceeding signed the "Agreement of Settlement and Mutual Release" which was attached to and made a part of such Application for Approval of Compromise as Exhibit A. Approval of Compromise and Settlement has not been granted by this Court pending a hearing scheduled for August 1, 2005.

(19) On April 25, 2005, this Court issued the above described Order to Show Cause Why McIntyre Should Not Be Sanctioned (Order to Show Cause) in the Bankruptcy Case. This Order also set a hearing on this matter for May 11, 2005 (Docket No. 68.)

(20) Kevin A. Pezzolla, President of International Component Technology (ICT), signed International Component Technologies [sic] Objection to Trustee's Application for Approval of Compromise and Settlement Agreement (ICT's Objection) which he filed in the Adversary Proceeding on May 9, 2005. This Objection is not signed by an attorney and has no signature line for an attorney. (Docket No. 74.) At the May 11, 2005 hearing, this Objection was admitted into evidence as Trustee's Exhibit 1. Pursuant to Federal Rule of Evidence 201(b), (c) and (f), this Court takes judicial notice of the fact that on its web site, International Component Technology claims to be a division of Nivek Industries, Inc. Nivek Industries, Inc. is listed on the California Secretary of State's web site as an active California corporation with a corporate address identical to the one ICT has used on its web site and in its Objection. The Court further takes judicial notice of the fact that neither the State Bar of Texas nor the State Bar of California has a listing for an attorney under the name Kevin Pezzola.

(21) On May 20, 2005, McIntyre filed Frank McIntyre's Response to Order to Show Cause and Request for Permission to Assist in the [Bankruptcy] Case (Response to Order) (Docket No. 78.) McIntyre alone signed the Response to Order.

(22) In the Response to Order, McIntyre stated that with respect to the

February 15th Hearing "Ms. Dieringer spoke for herself and the Court had the opportunity to make any inquiries it deemed appropriate regarding her qualifications." (Response to Order, p. 2)

(23) In the Response to Order, McIntyre stated that "Ms. Dieringer filed and made the argument regarding Franklin's Response to the Motion for Protective Order. It is not clear who filed the Notice of 2004 Examination, but McIntyre did not file it. . . . McIntyre further admits he drafted, signed, and faxed Terry Franklin's Notice of 2004 Examination . . . [and] Terry Franklin's Response to Tom McLaurin's Motion for Protective Order to . . . all other interested parties. . . . McIntyre faxed both documents to Lana Dieringer. Ms. Dieringer filed them with the Court." (Response to Order, p. 5)

(24) In the Response to Order, McIntyre states that "McIntyre also drafted, filed and served Franklin's Motion to Dismiss the Bankruptcy [Case]. There has been no hearing on that Motion but it is anticipated that Ms. Dieringer will make the argument on that Motion and on all other Motions. . . . The Court apparently failed to notice that McIntyre also signed, served and filed Terry Franklin's Motion to Dismiss the Bankruptcy [Case]." (Response to Order, p. 5)

(25) McIntyre additionally stated in the Response to Order that he "appeared in the bankruptcy with Lana Dieringer with the apparent permission of the Court and *after disclosing that he was not licensed to practice in the Southern District of Texas. . . .*" (p. 6, emphasis added) McIntyre further stated that "after Lana Dieringer reported to McIntyre the Court's opinion . . . at the [March 11,2005] hearing . . . that

it [this Court] believed McIntyre was prohibited under the circumstances from further participation in the case due to the state court's disciplinary restrictions, McIntyre withdrew pending clarification of that issue." (Response to Order, p. 7)

(26) On May 11, 2005, this Court conducted the hearing on the Order to Show Cause and Substitution of Counsel (the Show Cause Hearing.) The parties-in-interest at this hearing were:

(A) For Pamela G. Johnson the Trustee, Pamela G. Johnson (Johnson) and Deanna L. Longo (Longo);

(B) For the U.S. Trustee, Stephen D. Statham (Statham);

(C) For Frank W. McIntyre, Frank W. McIntyre (McIntyre);

(D) For Terry Franklin, Lana R. Dieringer (Dieringer);

(E) For Arnold Polanco and Ross, Banks, May, Cron & Cavin, Jim Barker (Barker); and

(F) For McLaurin and other related defendants in the Adversary Proceeding, Tom P. Allen (Allen).

(27) At the Show Cause Hearing, McIntyre made the following statement with respect to his appearance and representation of Franklin at the hearing on February 15, 2005:

"I have made one appearance in this court. Ms. Dieringer has made all subsequent appearances in this court. I made an appearance in this court at the hearing on February 15th. . . . And I also announced to the Court that I was not licensed to practice law in the Southern District of Texas, but that I was licensed to practice law in the Northern District of Texas; and I requested permission to represent Mr. Franklin. I introduced Ms. Diering-

er, and Ms. Dieringer made her own announcements for the record. Based on those announcements, the Court permitted me to speak.... I contacted Ms. Dieringer, discussed her background with her. And she agreed to participate in the case. And so I had no—based on what she had told me, I had no reason to believe that she was not qualified to represent Mr. Franklin." Hearing transcript, p. 5 line 17 et seq. (Docket No. 80.)

(28) During the Show Cause Hearing with respect to his ensuring that Dieringer, the counsel with whom he associated, was a "Bankruptcy Law specialist," McIntyre testified that "... I spoke with Ms. Lindauer [McIntyre's former Bankruptcy professor] and I spoke with Ms. Dieringer, and that was the extent of my investigation." Under cross-examination by Statham, the attorney representing the U.S. Trustee, McIntyre acknowledged he was not aware that Dieringer had only filed three appearances in the Bankruptcy Court for the Southern District of Texas, including the current case. McIntyre did not rebut the fact that Dieringer has only filed three appearances in the Bankruptcy Court. McIntyre further testified that he did not seek clarification from Judge Elliott as to what he (Judge Elliott) meant by the term "Bankruptcy Law specialist." (Hearing transcript p. 19, line 1 et seq.)

(29) At the Show Cause Hearing, Dieringer affirmed that prior to her appearance in the Bankruptcy Case and the Adversary Proceeding, she had told McIntyre that she did not consider herself to be a Bankruptcy Law specialist. (Hearing transcript p. 57, lines 21–25 and p. 63 line 2 et seq.) She further testified that McIntyre's response to her disavowal was that

the Judgment did not contain a definition of "Bankruptcy Specialist." (Hearing transcript p. 58, lines 2–3.)

(30) At the Show Cause Hearing, upon cross-examination by Longo, McIntyre denied that he listed the Debtor as a plaintiff in a law suit filed by him in state court and yet acknowledged by implication that he did so. McIntyre explicitly admitted that he did not have the Trustee's permission to join the Debtor as plaintiff and further that he had neither sought nor received approval of the Bankruptcy Court to act on behalf of Debtor. (Hearing transcript p. 27, line 13 et seq.)

(31) At the Show Cause Hearing, McIntyre admitted that he prepared ICT's Objection for signature by its President and that such Objection in the form of Trustee's Exhibit 1 is the form he prepared. He further acknowledged he is aware that a non-lawyer may not represent a corporation in the courts of the state of Texas. (Hearing transcript p. 22, line 20 et seq.)

(32) On May 20, 2005, this Court continued the Show Cause Hearing (the Continued Hearing.) At the Continued Hearing the same parties-in-interest appeared as at the Show Cause Hearing. In addition, DeAnne Claire, assistant disciplinary counsel for the State Bar of Texas (Claire), appeared as a witness.

(33) At the Continued Hearing, McIntyre stated that "[w]ith respect to the Cash Media Systems [the Debtor] and Terry Franklin suit against the Webzealots [presumably the defendant in that suit] ... my intent was, was to file the Cash Media-to file the suit ... primarily as a Terry Franklin derivative of his interest in Cash Me-

dia Systems." (Hearing transcript p. 4. lines 20–25.) McIntyre further testified that he did not have the authority of the Trustee to file the lawsuit. (Hearing transcript p. 7, lines 12–13.)

(34) Claire testified in the Continued Hearing that she was the prosecuting attorney for the State Bar of Texas in the action against McIntyre in Judge Elliott's court. She further testified that with respect to the portion of the Judgment referenced in (4), above, that "I'm not really sure that any of us, at the time that the Judgment was rendered did not understand what Judge Elliott meant. And so, I don't think there was any discussion. It was pretty clear." Hearing transcript p. 77, lines 21–25.

(35) Claire further testified that McIntyre contacted her regarding one of his clients who would need bankruptcy representation. She stated that her "advice to him was that he needed to file a motion to modify judgment and take it up with Judge Elliott, . . . ." Hearing transcript p. 78, lines 8–11.

(36) As to the meaning of the word "pleading," Claire testified "I use that term regarding any document that is going to be filed in the court. . . ." Hearing transcript p. 78, lines 23–24. As to the phrase "Bankruptcy Law specialist," Claire testified that would be "one who does practice Bankruptcy Law regularly so that they're familiar with the procedural requirements . . . ."

(37) During his questioning of Claire about the meaning of the phrase "Bankruptcy Law specialist," McIntyre asked ". . . would it be fair to say that the bankruptcy specialist would be somebody who practiced bankruptcy on a regular basis and a person who was not a bankruptcy specialist would be somebody like me who practices primarily in other areas?" Hearing transcript p. 82, line 22 et seq.

(38) At the Continued Hearing, McIntyre stated: "As to making court appearances, I made one court appearance other than the court appearances that I've been ordered to make here today. I made one court appearance, and I made that court appearance with the participation of Lana Dieringer, who was recommended to me as a bankruptcy attorney by my former law school law professor." Hearing transcript p. 88, line 21 et seq.

(39) At the Continued Hearing, McIntyre testified that at the February 15th Hearing he "introduced Ms. Dieringer [to the court], gave her an opportunity to speak, gave the Court the opportunity to make any inquiries of Ms. Dieringer. I had no reason to believe that there was anything further that I needed to say regarding Ms. Dieringer . . . ." Hearing transcript p. 90, lines 10–14.

(40) At the Continued Hearing, after a discussion about the meaning of the terms "board certified" and "specialist," McIntyre told this Court that he did not feel a duty to inform the Court at the February 15th Hearing that Deiringer had told him prior to such hearing, that she did not consider herself a bankruptcy specialist. Hearing transcript p. 90, line 16 et seq.

(41) At the Continued Hearing, this Court explicitly asked McIntyre if he had read "the local rules of the United States Bankruptcy Court for the Southern District of Texas and the local rules of the United States District Court for the Southern District of Texas prior to the February 15th Hearing." McIntyre's response was

"yes." This Court further asked if he had "read the local rules with respect to lawyers who are not admitted to practice before this Court?" McIntyre replied "that the rule required that I make a request to practice before the Court." Hearing transcript p. 94, line 23 et seq.

(42) The Clerk of Court for the U.S. District Court for the Southern District of Texas did not receive notification in writing by McIntyre of his suspension.

(43) The Order to Show Cause provided that any party-in-interest or creditor was entitled to appear and be heard and introduce evidence of any damages, attorney's fees or costs incurred as a result of McIntyre's actions which were to be under scrutiny at the Show Cause and Continued Hearings. Allen, counsel for some of the defendants in the Adversary proceeding including McLaurin, appeared and requested $5,389.50. Longo, counsel for the Trustee, appeared and requested $6,352.00. Barker, counsel for some of the defendants in the Adversary Proceeding, appeared and requested $2,500.00.

(44) At the Continued Hearing, the Court heard closing arguments of parties as to whether McIntyre should be sanctioned, and then took the matter under advisement.

## II. DISCUSSION

### A. General

The overriding concern of this Court is with McIntyre's behavior and whether he has conducted himself properly as an officer of the court. Did McIntyre comply with Judge Elliott's Judgment both in fact and in spirit? Did McIntyre properly appear before this Court? Did McIntyre usurp the duties of the Trustee? What is the effect of McIntyre drafting a motion for signature by an officer of an out-of-state corporate creditor coupled with apparent instructions as to filing such motion? The answers to these questions determine whether McIntyre's conduct rises to the level of being sanctionable. They are addressed below.

### B. Compliance with the Honorable Brady Elliott's Judgment.

#### 1. Signing Pleadings in Bankruptcy Court

In the Judgment, the Honorable Brady Elliott ordered McIntyre to "not sign any pleadings in Bankruptcy court" during the 18–month period following the date the Judgment was signed. It is uncontested that McIntyre signed the following documents within such 18 month period: (a) the Notice of 2004 Examination; (b) the Response to Tom McLaurin's Motion for Protective Order; and (c) the Motion to Dismiss the Bankruptcy Case which he incorrectly filed in the Adversary Proceeding.

McIntyre argues endlessly and tirelessly that Federal Rule of Civil Procedure 7(a) defines the term "Pleading" as essentially a "Complaint" and an "Answer" and that by its very name a "Motion" cannot be a Pleading. Hence, McIntyre argues he was permitted to sign such documents in the Bankruptcy Court.

This Court does not argue with this definition under the Federal Rules [1].

---

1. Rule 7(a) Pleadings, states that "There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; .... No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer." Rule 7(b) discusses Motions.

However, although Complaints and Answers are filed in the Bankruptcy Court, it is far more common for Motions to be filed[2]. Judge Elliott neither capitalized nor defined the term "pleadings" in his Judgment. By not doing so, this Court finds that Judge Elliott, a state judge who is not presumed to have any particular knowledge of bankruptcy law, was using the term "pleading" not as it is defined by federal or state rule or statute but in the plain, ordinary sense of the word, i.e., the manner in which it is used day-to-day by attorneys.

■ For general purposes, pleadings can be defined as legal documents filed in a lawsuit and can encompass a variety of forms. See general definition of the term in *Black's Law Dictionary* (8th ed.2004) and definition at *law.com Law Dictionary.* In its review of the hearing transcripts referenced in Section I, above, this Court has noticed that all of the attorneys who spoke, with the exception of McIntyre, referred to any document filed in the Bankruptcy Case and Adversary Proceedings as "pleadings." With respect to the word "pleading" as it appears in the Judgment, this Court finds that the substance of the entire paragraph taken as a whole shall control, not McIntyre's personal interpretation of one word lifted from that paragraph.

This Court finds that by not referencing the Federal Rules of Civil Procedure or any other rule of procedure, including the Texas Rules of Civil Procedure, Judge Elliott's intent is not to be bound by any specific rule; and it is not within McIntyre's power to so bind him. To the extent there was any confusion in McIntyre's mind, it was incumbent upon him to request clarification from Judge Elliott; indeed, Claire advised him to do exactly that. McIntyre opted not to do so. Rather, he chose to stick his head in the sand and sign pleadings that reflect an ignorance of bankruptcy law and border on being frivolous.[3]

Beyond disputing the meaning of the word "pleading" as used in the Judgment, McIntyre seems to be making the argument that while he *signed* the above referenced documents, he did not *file* such documents; rather he faxed them to, and they were filed by, Dieringer. See (23), above. This assertion is disingenuous. To follow this line of thought would require that the Court find that whichever messenger delivers a document to the Clerk of Court is the person who files such document. This Court finds that by signing the above Motions and Notice, McIntyre has in fact filed them. They are his work product and his responsibility. He cannot now disavow them.[4]

This Court finds that McIntyre has signed pleadings in bankruptcy court within the meaning of and in contravention to the Honorable Brady Elliott's Judgment.

2. Complaints and answers are filed in adversary proceedings. Motions are filed not only in adversary proceedings, but also in contested matters under Bankruptcy Rule 9014(a). There is no question that many more motions are filed in the bankruptcy courts than are complaints and answers.

3. For example, the Motion to Dismiss was: (a) captioned incorrectly; and (b) filed in the Adversary Proceeding eight days after the February 15th Hearing at which time this Court denied Franklin permission to intervene, thereby depriving him of standing in the Adversary Proceeding.

4. If Dieringer's name had been on the pleadings and she had signed them, as many local counsel do, then McIntyre could have advanced this argument. However, Dieringer's name does not appear on any of these documents; therefore, McIntyre is solely responsible for them.

### 2. Associating with a Bankruptcy Law specialist

■ By appearing at the February 15th hearing and filing motions and the Notice of 2004 Examination on Franklin's behalf in both the Adversary Proceeding and the Bankruptcy Cases, McIntyre was unquestionably engaged in the practice of "Bankruptcy Law" during the time of his probated suspension under the Judgment. While his signing of "pleadings" was prohibited by the Judgment, McIntyre's practice of bankruptcy law and appearance at the February 15th Hearing would not have been improper so long as McIntyre was associated with and accompanied by a "Bankruptcy Law specialist." Was he so associated? More specifically, is Dieringer a Bankruptcy Law specialist?

The Judgment does not require McIntyre to associate himself with a lawyer certified by the Texas Board of Legal Specialization in either consumer or business bankruptcy law. However, by following the reasoning of Rule 7.02(b) of the Texas Disciplinary Rules of Professional Conduct, were Dieringer so certified, such certification would conclusively establish that she was competent to handle legal matters with regard to bankruptcy law. Indeed, as contained in the very name of the Board, she would be a "specialist." Unfortunately for McIntyre, Dieringer is not Board certified in either area of bankruptcy law.

This Court agrees with McIntyre that it is fair to say that a Bankruptcy Law specialist would be someone who practices bankruptcy on a regular basis. See (37), above. This Court also agrees with Claire's opinion that such a specialist would be one who practices bankruptcy law regularly so that such person is familiar with the procedural requirements. See (36), above. McIntyre refers back to the work Dieringer performed as an FDIC liquidation officer writing creditor plans for workouts to bolster his claim that she is a bankruptcy "specialist." This Court notes that Dieringer performed such work before she attended law school (see (14), above) and that writing such plans has little to do with taking depositions and Rule 2004 examinations, going to court, examining and cross-examining witnesses, lodging objections, introducing exhibits into evidence, and making opening and closing arguments. The work done by Dieringer at the FDIC prior to her attending law school does not come within hailing distance of practicing bankruptcy law.

Although McIntyre argues that Dieringer is competent to represent Franklin, her competency is not at issue. What is at issue is whether her depth of knowledge of and frequency of practice in the bankruptcy arena rises to the level of a "specialist" under the Judgment. Accordingly, this Court finds that an attorney who lists her area of practice as real estate, who has appeared in the capacity of an attorney on only two prior occasions in Bankruptcy Court, and who does not consider herself a bankruptcy specialist, does not rise to the level of a "Bankruptcy Law specialist." See (28) and (14), above. Hence, this Court finds that Dieringer is not a Bankruptcy Law specialist as contemplated in the Judgment.

McIntyre asserts that in accepting Dieringer as a bankruptcy law specialist, he was relying on a recommendation by his former professor; and that after speaking with Dieringer, he did not make further inquiries. However, it was McIntyre's responsibility to determine that he was associated with a bankruptcy law specialist, not a third party's responsibility. McIntyre cannot shift this burden onto another's shoulders. It was McIntyre's duty to be informed of what constituted a "Bankruptcy Law specialist" under the terms of the Judgment. It was McIntyre's responsibili-

ty to clarify with Judge Elliott's court any doubts about the meaning of this term.

Yet this Court wonders how McIntyre could have had any doubts and confusion since Dieringer had informed him that she did not consider herself to be a bankruptcy law specialist. See (29), above. Further, McIntyre has stated that when he appeared before this Court at the February 15th Hearing, he felt no duty to inform this Court he was appearing with a "Bankruptcy Law specialist" who did not consider herself to be such a specialist. See (40), above. Worse, McIntyre asserted that he "introduced Dieringer, gave her an opportunity to speak, gave the Court the opportunity to make any inquiries of Ms. Dieringer...." See (39), above. A review of the transcript suggests that at the February 15th Hearing, McIntyre glossed over Dieringer and her presence to avoid any such inquiries. In spite of his statements to the contrary, McIntyre merely introduced Dieringer as local counsel; she said "good afternoon, your Honor;" and McIntyre continued speaking. Although he specifically discussed Calvin Braun's status as bankruptcy counsel, McIntyre did not discuss Dieringer's status as anything other than "local counsel."

McIntyre wants to shift responsibility away from himself. He argues that it was this Court's responsibility at the February 15th Hearing to raise the issue of Dieringer's qualifications as a bankruptcy law specialist. This position is disingenuous. It is not this Court's nor any other Court's responsibility to ferret out misbehavior of attorneys who appear before the Bar. This Court trusts that any attorney, as an officer of the court, would, at a bare minimum, follow the requirements of a direct judicial order, such as the Judgment, without being closely questioned by the Court. In fact, Texas Disciplinary Rule of Professional Conduct 3.04(d) specifically requires that a lawyer shall not "knowingly disobey ... a ruling by a tribunal." [5] McIntyre had an obligation to either clarify Dieringer's status with Judge Elliott or directly raise the issue with this Court so that this Court could assess whether she is a "Bankruptcy Law specialist" pursuant to the Judgment. This Court finds that by ignoring Dieringer's statement that she was not a bankruptcy specialist, and making no further inquiries as to her area of practice and number of appearances in Bankruptcy court, McIntyre not only did not associate himself with and did not attend the February 15th Hearing with a Bankruptcy Law specialist, he did so in blatant disregard of the Honorable Brady Elliott's Judgment.

### 3. Effect of Noncompliance with the Judgment.

Judge Elliott placed McIntyre under an interdiction for a reason clearly exemplified by McIntyre's recent actions before this Court. To the extent Dieringer is indeed competent to represent Franklin in bankruptcy court, McIntyre did not submit himself to her governance as witnessed by the fact that he filed one pleading titled "Terry Franklin's Motion to Dismiss the Bankruptcy Proceeding." The relief sought was a request for this Court to "dismiss this bankruptcy and the adversary proceeding without prejudiced [sic] to his right to pursue appropriate relief against the adversary defendant in the state court...." This filing highlights McIntyre's ignorance because: (a) the two requests for dismissal—one in the Bankruptcy Case and one in the Adversary

---

5. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.04(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1997) (TEX. STATE BAR R. art. X, § 9).

Proceeding—required two separate motions; (b) while the motion was titled as a request to "dismiss the Bankruptcy proceeding," i.e., the entire case, McIntyre actually filed the motion in the Adversary Proceeding, when such motion should have been properly filed in the Bankruptcy Case; (c) had McIntyre intended to file this motion in the Bankruptcy Case, he should have captioned the document with the Case Number only and not included the Adversary Number in the caption; and (d) McIntyre filed this motion in the Adversary Proceeding eight days after his client, Franklin, had been denied leave to intervene and, therefore, had no standing to file anything in the Adversary Proceeding! McIntyre's filing of the Motion to Dismiss Bankruptcy speaks to his lack of competence to practice bankruptcy law and the reason for the restrictions placed on him in the Judgment.

McIntyre stated in his Response to Order that there has been no hearing on the Motion to Dismiss Bankruptcy but he anticipates Dieringer will make the argument on such motion. See (24), above. This Court finds that since Franklin had no standing in the Adversary Proceeding, this Motion as it applies to the Adversary Proceeding will be denied and a separate order will be issued to that effect. With respect to the request for dismissal of the Bankruptcy, this Motion was improperly filed in the wrong proceeding; thus, there will be no hearing on this request.

### C. Appearance Before This Court

### 1. Violation of LR 83.1K

### a. Violation

■ Practice before this Court is governed by the Local Rules of the United States Bankruptcy Court for the Southern District of Texas and the Local Rules of the United States District Court for the Southern District of Texas. Bankruptcy Local Rule 1001(e) provides that admission is governed by the local rules of the district court. District Court Local Rule LR 83.1K provides that:

"A lawyer who is not admitted to practice before this Court may appear as attorney-in-charge for a party in a case in this Court with the permission of the judge before whom the case is pending. When a lawyer who is not a member of the bar of this Court first appears in a case, the lawyer shall move for leave to appear as attorney-in-charge for the client."

McIntyre is not a member of the bar of this Court. His statements to the contrary notwithstanding, McIntyre did not disclose at the February 15th Hearing that he was not licenced to practice law in the Southern District of Texas. See (25), (27) and (6), above. Nor did McIntyre move for leave to appear as attorney-in-charge or request permission to represent Franklin. In fact, a reading of the transcript of the February 15th Hearing suggests that McIntyre might have deliberately obscured the issue of his qualifications to practice. Because the pre-trial conference was set for February 24, 2005, only nine days hence, there was some urgency to Franklin's Motion for Leave to Intervene. Thus, this Court permitted McIntyre to appear and argue at this hearing without considering his status. McIntyre did not subsequently file a Motion for Leave to Appear as Attorney–in–Charge. However, he did subsequently file with this Court the Motion to Dismiss the Bankruptcy, the Notice of 2004 Examination, and the Response to Motion for Protective Order, all without Dieringer's participation.

The Local Rules are clear and do not require interpretation. McIntyre was required to move for leave to appear. Since he did not do so, he was at fault. It is not

this Court's, nor any other Court's, responsibility to quiz each attorney who appears before it to determine if such attorney is a member of the local bar. The courts may rightly presume that attorneys who personally appear before them are entitled to do so. Indeed, it is McIntyre's responsibility to know the Local Rules and he did, in fact, testify that he had read such rules. See (41), above. Regardless, McIntyre did not follow Local Rule 83.1K.

■ As an officer of the Court, McIntyre not only has a duty to follow the rules of the Court but also has a duty of honesty and candor before the Court. Clause IV of The Texas Lawyer's Creed Texas specifically provides that lawyers owe judges candor. Texas Disciplinary Rule of Professional Conduct 8.04(a)(4) provides that "[a] lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The 6th Circuit has wonderfully said that an attorney's "loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court." *Thompson v. Bell* 373 F.3d 688, 730 (6th Cir.2004).

Further, Texas Disciplinary Rule of Professional Conduct 3.04(d) provides that a lawyer shall not "knowingly disobey ... an obligation under the standing rules of or a ruling by a tribunal...." Although McIntyre has not explained why he did not file a Motion for Leave to Appear, he has not argued that he was unaware of the Local Rule 83.1K. In fact, McIntyre has stated that he had read the Local Rules prior to the February 15th Hearing. See (40), above. Thus, this Court can conclude—and does so conclude—that McIntyre knowingly disobeyed Local Rule 83.1K, and has therefore also violated Rule 3.04(d).

**b. Appearance**

■ At the Continued Hearing, McIntyre appeared to be making the argument that his only appearance before this Court was at the February 15th Hearing at which he had implied permission to appear. See (27) and (38), above. Apparently, McIntyre is unaware that the District Court's Local Rules of Discipline provide that "[a]n appearance by a lawyer before the court, *by writing*, or in person, confers disciplinary jurisdiction upon the court under these rules." Appendix A, Rules of Discipline, Rule 7 (emphasis added.) The 5th Circuit has recently said "[a] party makes a general appearance whenever it invokes the judgment of the court on any question other than jurisdiction .... '[in] determining whether conduct is sufficient to be considered a general appearance, the focus is on affirmative action that impliedly recognizes the court's jurisdiction over the parties.'" *Maiz v. Virani* 311 F.3d 334, 340 (5th Cir.2002) citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1340–41 (5th Cir.1996). Indeed, the 5th Circuit has interpreted "appearance" broadly enough to encompass informal acts and has thus found that "appearance" may occur without a party having gone so far as to file documents in the record. See *Sun Bank of Ocala v. Pelican Homestead and Savings Association* 874 F.2d 274, 276 (5th Cir.1989).

■ McIntyre alone signed and filed Franklin's Notice of 2004 Examination, Franklin's Response to McLaurin's Motion for Protective Order, and Franklin's Motion to Dismiss the Bankruptcy Proceeding. By so doing, McIntyre clearly recognized this Court's jurisdiction over the parties. This Court notes that by signing these documents, McIntyre was *de facto* acting as attorney-in-charge regardless of whether Dieringer was somehow involved as local counsel. Hence, McIntyre appeared before this Court on more than one occasion without having moved for leave to

appear as attorney-in-charge for Franklin under LR 83.1K. Therefore, he is in violation of this Rule.

### 2. Violation of Local Rules of Discipline, Rule 3

■ The United States District Court for the Southern District of Texas has promulgated Rules of Discipline, which govern all attorneys practicing before the court. Rule 3 provides that "[a] lawyer suspended ... by another court in the United States shall promptly notify the clerk of court in writing of that action and immediately cease to practice before this court. The lawyer will furnish a certified copy of the order of suspension...."

Whether admitted *pro hac vice* or not, McIntyre brought himself before this tribunal and thereby voluntarily subjected himself to its rules. It was incumbent upon him to inform the Clerk of Court of his suspension. McIntyre did not notify the Clerk of Court of his suspension as required by Rule 3. See (42), above.

### D. Usurpation of Trustee's Duties

McIntyre has admitted that he filed a law suit in state court listing the Debtor as a plaintiff. McIntyre has further admitted that he did not have permission from the Trustee to join the Debtor as plaintiff and that he had not sought and had not received approval of the Bankruptcy Court to act on behalf of Debtor. See (30) and (33), above. Although McIntyre attempts to soften the reality of his actions by discussing his intent, his intent does not alter the fact that he purported to represent the Trustee in state court. See (33), above.

■ It is basic black letter law that upon the filing of a bankruptcy petition, an estate is created and such estate comprises all legal or equitable interests of the debtor as of the commencement of the filing. Such property includes any legal claims that belonged to the debtor at the time the petition was filed. 11 U.S.C. § 541(a)(1); *In the Matter of Swift,* 129 F.3d 792, 795 (5th Cir.1997). The bankruptcy trustee is the representative of the estate and has the capacity to sue and be sued. 11 U.S.C. § 323. The 5th Circuit has explicitly ruled that as a matter of law, the trustee has the exclusive authority to assert a claim belonging to the estate. *In the Matter of Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994). The trustee may "commence and prosecute any action or proceeding in behalf of the estate before any tribunal." Fed. R. Bankr.P. 6009. The trustee may also abandon any property of the estate which is burdensome or of inconsequential value and benefit to the estate. 11 U.S.C. § 554(a).

■ Therefore, in the case at bar, it is the Trustee's prerogative to determine which causes of action she will pursue and in which venue (within the constraints of 28 U.S.C. § 1334) she will pursue them. See *Carter v. Carter* 21 S.W.3d 441, 443 (Tex.App.-San Antonio 2000). The Debtor filed a Chapter 7 petition in this Court; the Debtor's Estate is under this Court's jurisdiction; and the Estate is under the Trustee's control. Regardless as to how Franklin personally feels about any potential cause of action owned by the Estate, he does not possess a right to pursue such cause on behalf of the Debtor. That right is vested solely in the Trustee. Consequently, McIntyre acted improperly by filing a cause of action in another court in the name of the Debtor. Although this filing did not occur in the Bankruptcy Court, this overreaching again illustrates why Judge Elliott was attempting to restrict McIntyre's involvement in bankruptcy cases.

### E. ICT's Objection

#### 1. Suborning Misconduct

On May 9, 2005, Kevin Pezzolla filed ICT's Objection in the Adversary Proceed-

ing. ICT is a division of a California corporation and Pezzolla signed ICT's Objection as ICT's president. ICT's Objection is drafted in a form such that a corporate officer who is not an attorney licensed in Texas is the signatory. ICT's Objection has no signature line for an attorney. McIntyre has acknowledged drafting and transmitting such Objection to ICT for its use. See (20) and (31) above.

By filing ICT's Objection in this Court, ICT was attempting to represent itself *pro se.* Texas law does not permit a corporation to represent itself in court. In Texas, "[o]nly a licensed attorney may practice law. A corporation may not appear in court through its officers who are not attorneys." *Globe Leasing, Inc. v. Engine Supply and Machine Service,* 437 S.W.2d 43, 45 (Tex Civ.App.-Houston 1969); Tex.R. Civ. P. 7. Texas law controls here because in the federal courts, except for matters governed by the Federal Constitution or by acts of Congress, the law to be applied is the law of the state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). McIntyre has not only disregarded such law himself, he has also suborned the president of a foreign corporation to attempt to file on its own behalf in contravention of such law. Since McIntyre has admitted that he knows that a non-lawyer cannot represent a corporation in court in the state of Texas, this Court can only conclude that McIntyre deliberately engaged in conduct that merits sanctions.

## 2. Ghostwriting

"Ghostwriting," exists where an attorney prepares documents for filing for a party who would otherwise appear unrepresented in litigation. See *In re Merriam,* 250 B.R. 724, 733 (Bankr. D.Colo.2000) citing *Ellis v. Maine,* 448 F.2d 1325, 1328 (1st Cir.1971), et al. Rule 11 and related Bankruptcy Rule 9011 require documents filed in court to be signed. Fed.R.Civ.P. 11 and Fed. R. Bank. P. 9011. The required signature is a certification that according to the best of the signer's knowledge, information and belief, the pleading is not being presented for an improper purpose, its legal contentions are warranted by existing law, and the factual allegations have evidentiary support. Rule 11(b) and Bankruptcy Rule 9011(b). The signature determines who is responsible for the accuracy of the allegations in the documents. Documents prepared by lay persons without counsel, i.e., *pro se,* are interpreted more liberally that those prepared by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Although neither Rule 11 nor its bankruptcy counterpart address the issue of ghostwriting, many courts disapprove of the practice. See, *Merriam,* et al. "When an attorney has the client sign a pleading that the attorney prepared, the attorney creates the impression that the client drafted the pleading. This violates both *Rule 11* and the duty of honesty and candor to the court." *Merriam* at 733. See discussion of honesty and candor in C. 1., above. While ghostwriting a petition filed with the court may seem to be a minor matter, this sub-rosa behavior highlights McIntyre's less than straightforward actions before this Court. In fact, as discussed above, it resulted in McIntyre leading ICT's personnel into an unlawful act.

## 3. Withdrawal From Proceeding

McIntyre stated in his Response to Order that after the March 11, 2005 hearing, he believed he was no longer permitted to participate in "the case" and so "withdrew pending clarification of that issue." See (24), above. ICT's Objection was filed on May 9, 2005—two months after McIntyre

felt the need to withdraw. If McIntyre had indeed withdrawn and was no longer participating in "the case," this Court wonders what he was doing when he drafted the Objection for ICT and instructed its personnel to file such Objection in the Adversary Proceeding. This Court finds that he was actually practicing bankruptcy law, albeit surreptitiously, and once again incorrectly.

**F. Sanctions**

McIntyre's behavior, taken as a whole, is so egregious as to be subject to sanction. "When an attorney appears before a federal court, he is acting as an officer of that court, and it is that court which must judge his conduct." *Cord v. Smith*, 338 F.2d 516, 524 (9th Cir.1964). This Court finds three bases under which to sanction McIntyre.

On February 15, 2005, this Court denied Franklin's motion to intervene in the Adversary Proceeding resulting in Franklin having no standing to file anything in the Adversary Proceeding. Nonetheless, a mere eight days later on February 23, McIntyre filed the Motion to Dismiss on Franklin's behalf in the Adversary Proceeding. There was no basis in law for this filing; thus, McIntyre is subject to sanctions under Bankruptcy Rule 9011(b) and (c).

McIntyre filed the Motion to Dismiss and suborned Pezzolla to file ICT's Objection. These pleadings multiplied the proceedings unreasonably; thus, this Court may require McIntyre to personally satisfy the excess costs, expenses and attorney's fees reasonably incurred because of such conduct. 28 U.S.C. § 1927.

Finally, using its inherent power, this Court may impose sanctions on a party or a party's attorney who engages in "acts which degrade the judicial system, including … fraud, misleading and lying to the Court." *Chambers v. NASCO*, 501 U.S. 32, 42, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). This Court finds that McIntyre has committed such acts.

Consequently, for having committed such acts as described above, for having disobeyed the Judgment, and for having wasted the time and resources of this Court and the other parties-in-interest and their respective counsel, this Court finds that sanctions should be imposed against McIntyre. Specifically, McIntyre is sanctioned a total of $11,290.05 payable as follows: (a) $5,389.50 to Resource Teledata, Incorporated, Thomas McLaurin, Lockland McLaurin, Barbara McLaurin and Martha McLaurin representing attorney's fees for services provided by Allen from February 25, 2005 through May 10, 2005, along with three and one-half hours spent at the Show Cause Hearing and two hours spent at the Continued Hearing; (b) $3,975.00 to Pamela Gale Johnson representing attorney's fees for services provided by Longo from February 15, 2005 through April 26, 2005 along with three and one-half hours spent at the Show Cause Hearing and two hours spent at the Continued Hearing; (c) $1,100.00 to Arnold Polanco and Ross, Banks, May, Cron and Cavin, P.C. representing attorney's fees for services provided by Barker at the Show Cause Hearing and at the Continued Hearing; and (d) $825.55 to the Clerk of this Court, which amount represents the cost to the Clerk for obtaining, at this Court's request, transcripts of the Show Cause Hearing and the Continued Hearing.

## III. CONCLUSION

Throughout his dealings before this Court, McIntyre has exhibited a pattern of disturbing attitudes and behaviors. For McIntyre to take the word "pleading," the use of which can be readily determined

within the context of the Judgment, and with great sophistry argue a particular meaning so as to justify signing and filing documents in bankruptcy court, is both disrespectful to Judge Elliott and to this Court. Further, McIntyre's lack of concern as to what Judge Elliott meant by the phrase "Bankruptcy Law specialist," and his decision to interpret the meaning to suit himself and his situation rather than request clarification, shows an arrogant disregard of what Judge Elliott was attempting to accomplish.[6] Judge Elliott's objective, of course, was that McIntyre not practice bankruptcy law without supervision by a specialist. McIntyre's signing Franklin's Motion to Dismiss Bankruptcy, incorrectly captioning it, and then filing it in the Adversary Proceeding perfectly exemplifies why Judge Elliott was attempting to both restrain and educate McIntyre.

A further indication of McIntytre's failure to adhere to bankruptcy laws was his filing a law suit in state court in which he joined Debtor as plaintiff without approval of either the Trustee or this Court. By this action he improperly usurped the powers of the Trustee. Even after McIntyre apparently realized that he should not be participating in actions before this Court, he drafted a motion on behalf of a corporate creditor as a "ghostwriter" and then induced an officer of such corporation into attempting to appear on behalf of the corporation in a *pro se* capacity in this Court.

McIntyre's final improper acts concerned his appearance in the Southern District of Texas. McIntyre appeared before this Court and acted as attorney-in-charge for Franklin without having moved for leave to appear as required by District Court Local Rule LR 83.1K. Having brought himself before this Court and

thereby subjecting himself to its rules, McIntyre also failed to inform the Clerk of Court of his suspension imposed by the Judgment as required by the Local Rules of Discipline Rule 3.

In sum, this Court finds that McIntyre has violated Judge Elliott's Judgment by signing multiple documents in bankruptcy court within the meaning of and in contravention to the Judgment. Further, this Court finds that McIntyre failed to associate with a "Bankruptcy Law specialist" as required by the Judgment both by not ensuring that such counsel truly was a specialist and by not submitting himself to her governance. McIntyre has also appeared in this Court in contravention of the Local Rules for the United States District Court, Southern District of Texas both in person and by filing motions for Franklin while neither being a member of this bar nor having filed a motion to appear *pro hac vice*. McIntyre has usurped the power of the Trustee by filing suit on Debtor's behalf in state court. Finally, he has induced the president of an out-of-state corporation to represent such corporation without an attorney.

In reviewing the totality of McIntyre's actions in both the Bankruptcy Case and the Adversary Proceeding, this Court finds a disturbing pattern of behavior. This behavior includes blatant disregard of Judge Elliott's Judgment justified by tortured reasoning, ignorance or disregard of bankruptcy and procedural black letter law, ignorance or disregard of rules governing practice in the forum in which he appears, and inducement of individuals into questionable or outright damaging behavior.

---

6. Indeed, Claire advised McIntyre to file a motion and "take it up with Judge Elliott."

See (34), above.

This Court finds that McIntyre is not competent to practice bankruptcy law and should be supervised by a Bankruptcy Law specialist, i.e., an attorney who is either board certified in consumer or business bankruptcy law or one who regularly and frequently practices bankruptcy law in the bankruptcy courts.

For having disobeyed the Judgment, and for having wasted the time and resources of this Court and the other parties-in-interest and their respective counsel, this Court finds that sanctions should be imposed against McIntyre. Specifically, McIntyre is sanctioned a total of $11,290.05 payable as follows: (a) $5,389.50 to Resource Teledata, Incorporated, Thomas McLaurin, Lockland McLaurin, Barbara McLaurin and Martha McLaurin representing attorney's fees for services provided by Allen from February 25, 2005 through May 10, 2005, along with three and one-half hours spent at the Show Cause Hearing and two hours spent at the Continued Hearing; (b) $3,975.00 to Pamela Gale Johnson representing attorney's fees for services provided by Longo from February 15, 2005 through April 26, 2005 along with three and one-half hours spent at the Show Cause Hearing and two hours spent at the Continued Hearing; (c) $1,100.00 to Arnold Polanco and Ross, Banks, May, Cron and Cavin, P.C. representing attorney's fees for services provided by Barker at the Show Cause Hearing and at the Continued Hearing; and (d) $825.55 to the Clerk of this Court, which amount represents the cost to the Clerk for obtaining, at this Court's request, transcripts of the Show Cause Hearing and the Continued Hearing.

For the foregoing reasons, this Court imposes the above described sanctions against McIntyre. This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law[7] pursuant to FED. R. CIV. P. 52, as incorporated into adversary proceedings in bankruptcy cases by FED. R. BANKR. P. 7052. This Court will issue a separate order consistent with this Memorandum Opinion.

---

7. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. This Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.